## Wytheville

### F. C. OTT v. B. F. PERROW.

#### June 14, 1923.

1. VENDOR AND PURCHASER—*Payment—Vendor's Right to Demand Payment—Liens Upon Property.*—Where there are liens on the property the vendor has the right to demand payment of only so much of the purchase price as is in excess of the liens.

2. VENDOR AND PURCHASER—*Breach of Contract by Vendor—Conclusiveness of Verdict in Favor of Vendee—Case at Bar.*—In the instant case, an action of assumpsit against the owner of land for damages for alleged. breach of contract to convey the land, the issue involved was one of fact, depending upon the testimony, and the vendor relied almost entirely upon his own testimony, which was evasive, obscure and immaterial, and in conflict with that of the plaintiff.

   *Held:* That the verdict in favor of plaintiff was conclusive upon the points on which the evidence was conflicting, and that the judgment. in plaintiff's favor should be sustained.

Error to a judgment of the Circuit Court of Fauquier county, in an action of assumpsit. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Grimsley & Miller* and *R. A. McIntyre,* for the plaintiff in error.

*J. Donald Richards,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

B. F. Perrow, plaintiff in an action of assumpsit, recovered a judgment against the defendant, Ott, for

·damages for alleged breach of contract to convey land, ·of which judgment the defendant is here complaining.

These pertinent facts appear as the basis for the ·action:

The defendant being the owner of a farm containing 165 acres, by agreement of July 24, 1919, listed it for ·sale with the plaintiff, who was a real estate agent.   It was thereby agreed that $9,500.00 should be the net ·price to be realized by the owner, upon which there ·should ·be no commission to the agent.   His compensation was to be any surplus over that amount which he ·could secure; and the defendant promised to give six ·months' notice before revocation of that contract.   At the time there were liens upon the property for ·$7,000.00.   On the 8th of August following, the plaintiff secured one J. F. May as purchaser of 132 acres, ·part of the farm, at the price of $8,000.00, and at the ·same time agreed himself to buy the remaining thirty-three acres thereof for $1,500.00, making the $9,500.00 ·net to the defendant, as required by the original con-· tract.   When, however, agreements were presented to ·Ott, the defendant, he refused to sign the May contract until the price was increased $500.00, so as to make the ·property net him $10,000.00.   This was acceded to, ·and $500.00 was paid by May to the defendant on ·account of such purchase price.   In this May contract it was agreed that partial or "seeding" possession of the lands was to be given as soon as the corn was cut, ·and full possession on January 1, 1920.   Thereafter, May and Perrow, the plaintiff, agreed by parol that Perrow should succeed to May's rights under the contract covering the 132 acres for which Perrow paid May $1,000.00, $500.00 of which was to repay him the amount he had paid to Ott, and $500.00 profit to May ·on his bargain.   Because of this agreement with Per-

row, May endorsed his contract as cancelled. Perrow then considering himself in control of the entire property, on the 4th day of April, 1919, agreed to sell it to L. D. Earhart, J. H. Earhart and W. D. Earhart, styling themselves as partners, for $12,500.00, of which $3,000.00 was paid to Perrow on the 1st of November, 1919.

Ott's contract with May required the balance due by May, $8,000.00, or so much thereof as should be required by Ott, to be paid "when a good and sufficient deed is turned over" by him to May. Perrow and the Earharts prepared themselves for consummating their transaction, but Ott never prepared or tendered a deed either to May, Perrow or the Earharts, and claimed that under the May contract he was entitled to have $8,000.00 in cash paid over to him as a condition precedent to his conveyance.

There are some other contentions between the litigants depending upon conflicts in the testimony. After Perrow had his understanding with May, he took the Earharts to see the property, and while there, according to testimony which is denied by Ott but which is nevertheless convincing, Ott agreed with the Earharts that if they would allow him to remain upon the premises until March 1, 1920 (in case the Earharts bought the property), he would seed the wheat and grass upon the farm for the coming year. The Earharts agreed to buy the entire farm after they had this understanding with Ott. This also appears from the testimony of May, reciting a conversation which he thereafter had with Ott:

"He (Ott) came to me and said he heard that I had sold the place. I told him I didn't know if it was sold or not; that I had told Mr. Perrow to sell it. He said that Mr. Perrow had some gentlemen there looking at

it.    He didn't tell me their names.    So, he asked me
what profit I was getting on it, and I told him.    He
told me to let him have the place, that he would give
me $500.00 profit on it.    I told him I couldn't do that
until I seen if Mr. Perrow had sold it or not; that I had
given it over to him to sell, and that if he had made a
sale, I wouldn't take it out of his hands.    He said that
Mr. Perrow was going to make too much profit on it;
that he was selling the place for $12,500.00, so I called
Mr. Perrow up to see if he had sold it, and I tried to
call him and I couldn't get him.    Then I written him
a letter, and he answered my letter and told me the
place was sold."

"Q. Did Mr. Ott make any statement to you as to
the time of possession under the contract?

"A. Yes.

"Q. Just a second, until I finish my question—for
the sale which Mr. Perrow had made for you?

"A. Yes.    He told me that if the other party got it,
he would get to stay there longer than if I got it; that
the other man did not want possession until the 1st of
March.

"Q. Did Mr. Ott say anything to you about the
reason why he did not want to sell the place?

"A. He said he had looked around and he couldn't
find any place to suit him as well as the one he had.
He liked the place he had and he would like to keep it.

"Q. When did this conversation take place, as near
as you can fix the time?

"A. Well, it was just about the time that Mr. Per-
row had sold the place to Mr. Earhart.    I don't know
just what date it was, but it was just along about that
time, because I written Mr. Perrow and got a letter
from him in the next day or two that he had sold the
place; so it was along about that time; I don't know
the date."

Another witness testified that Ott told him that he had arranged to remain where he was until March to feed his feed there to his cows, and that he gave that as a reason why he wanted to rent a place from the witness to move about the first of March.

This line of testimony, if true, shows with reasonable certainty that Ott knew that, relying upon the contracts with Perrow and May, the sale had been made, or was about to be made, to the Earharts, and his securing permission from the Earharts to remain in possession of the property until March 1st is inconsistent with his present claim that he was insisting upon all of his rights under the May contract which, it must be remembered, required him to surrender possession January 1st.

Upon the conclusion of the testimony, the defendant moved to exclude all of the testimony offered by the plaintiff, as failing to prove the case as alleged in the declaration, which motion was overruled. After the adverse verdict, he moved to set it aside as contrary to the law and the evidence, which motion was also overruled, and he assigns as error the granting of certain instructions and the refusal to grant certain other instructions. All of these motions and assignments present substantially the same question.

[1] It was urged in the trial court and is seriously insisted upon here, that Ott, under the circumstances detailed, had the absolute right to insist upon the strict performance to the letter of his contract with May, and especially his right to demand $8,000.00 in cash as of the first of January, which date he says he extended to the 10th of that month. It is observed, however, that under the admitted facts of this case he was not in a position to demand that amount, because there were $7,000.00 in liens upon the property, and the extreme limit of his demand for cash, so long as these liens were

unpaid, could not possibly exceed $5,000.00, which amount Earhart had paid to Perrow and Perrow had notified Ott that he had these funds in hand for him.

The defendant relies for his defense almost entirely upon his own testimony. It is not unfair to say that much of it is evasive, obscure and immaterial, and that where it affects the material issues in the case it is contradicted by other witnesses. Although he has in the assertion of his alleged rights never tendered any deed, and remained in full possession of the property which he had agreed to convey, he has nevertheless also retained $500.00, part of the purchase money paid to him by May, and he makes the clearly untenable claim that it has been forfeited to him. Under these circumstances, it is not surprising that the jury returned a verdict against him in favor of Perrow for an amount equal to the loss of his profits, $2,500.00, on his sale to the Earharts, and for the $500.00 which had been paid to the defendant, Ott, on account of the purchase price; nor is it surprising that the trial court refused to set aside their verdict.

[2] Many close questions of law are discussed in the briefs for the defendant, Ott, which in our view of the case do not require consideration. The issue involved is one of fact, depending upon the testimony, and upon those points on which that introduced for the defendant conflicts with that introduced for the plaintiff, the verdict is conclusive. It is, we think, also unnecessary to discuss the various instructions given and refused, for as it appears to us those which were given fully protect every substantial right of the defendant, and the case has been decided against him because of the lack of merit in his claim. The plaintiff has fairly proved the promises, express or implied, out of which his right to recover grows.

*Affirmed.*